# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

ROGERIO CHAVES SCOTTON,

    Petitioner,

v.

TRACY JOHNS,

    Respondent.

CIVIL ACTION NO.: 5:17-cv-20

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Rogerio Chaves Scotton ("Scotton"), who is currently housed at D. Ray James Correctional Facility ("D. Ray James") in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response. (Doc. 15.) Scotton then filed a Motion for Extension of Time to file a Reply. The Court **GRANTS** that Motion, and Scotton's June 26, 2017, Reply, (doc. 18), shall be deemed timely filed. However, the Court **DENIES** Scotton's Motion for Copies, (doc. 17). Additionally, for the reasons which follow, I **RECOMMEND** that the Court **DENY in part** and **DISMISS in part** Scotton's Petition, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Scotton *in forma pauperis* status on appeal.

## **BACKGROUND**

Scotton is currently serving a 108-month sentence for having committed the offenses of mail fraud and false statements. (Doc. 15-1, pp. 20–22.) He is incarcerated at D. Ray James,

and he has a projected release date of April 7, 2020, via good conduct time release, to be followed by 3 years of supervised release.[1] (Id.)

On June 1, 2016, the Kitchen Food Service Manager at D. Ray James called for Scotton in his unit and directed him to report to the kitchen for his work assignment. (Id. at pp. 26–27.) Scotton allegedly refused to report to the kitchen and told the manager that he will never report to work in the kitchen. (Id.) The kitchen manager then called Investigator Bonorden and stated that Scotton will never report to the kitchen for work. (Id.) Bonorden began an investigation into the incident on June 1, 2016. (Id.) The investigator advised Scotton of his right to remain silent at all stages of the disciplinary process and that his silence may be used to draw an adverse inference against him at any stage of the disciplinary process. (Id.) The investigator also informed Scotton that his silence alone may not be used to support a finding that he committed the violation. (Id.) Scotton acknowledged that he understood these rights and denied stating that he would never work. (Id.) However, Scotton stated that he could not work in the kitchen due to a health condition. (Id.) The investigator concluded that there was sufficient evidence to support the charge against Scotton, and the Incident Report was then forwarded to the Unit Disciplinary Committee ("UDC"). (Id.)

The UDC hearing was held on June 3, 2016. Scotton appeared at the hearing and provided a statement in his defense restating his prior denial of the charges. Due to the nature of the allegation and the fact that this was Scotton's third offense of this level, the UDC made no decision and referred the matter to be heard by a Disciplinary Hearing Officer ("DHO"). (Id.) The UDC recommended a loss of 27 days of good conduct time and a change of quarters. (Id.)

---

[1] The BOP contracts with GEO Group, Inc., to house low security criminal alien inmates at D. Ray James. (Doc. 15-1, p. 1.)

On June 3, 2016, D. Ray James staff provided Scotton with notification of the DHO hearing and his rights regarding the hearing. (Id. at pp. 29–32.) Scotton refused to sign the notice, and a staff member witnessed his refusal. (Id.) Scotton was notified of his opportunity to request witnesses and the assistance of a staff representative, and he did not request either. (Id.)

The original DHO hearing was scheduled for June 15, 2016. (Id. at pp. 34–37.) Scotton appeared at this hearing and requested to call witnesses. (Id.) Thus, the DHO hearing was postponed to locate his requested witnesses and schedule their appearance.

DHO Roger Perry reconvened the hearing on June 20, 2016. (Id.) Scotton was once again advised of his due process rights and was provided an opportunity to make a statement and present documents. (Id.) Scotton requested the assistance of a staff representative and asked to call four witnesses. Scotton's staff representative appeared at the hearing and stated that she met with him prior to the hearing and that they both were ready to proceed. (Id. at p. 39.) During the hearing, DHO Perry heard from Scotton's four witnesses, all of whom were fellow inmates. (Id. at p. 36.)

Scotton made contradictory statements during the hearing. (Id.) He denied the charge against him but also stated that he told the officer that he did not want to work in the kitchen. (Id.) Additionally, one of Scotton's witnesses, a fellow inmate, stated that Scotton was told that he needed to work, and Scotton refused to go. (Id.) DHO Perry also considered the statement from the Food Service Manager that Scotton refused to report to work when told to do so, as well as a statement from a correctional officer in Scotton's unit who stated that she also told Scotton to report to work in the kitchen, and Scotton told her that he was not going to do so. (Id.) Additionally, DHO Perry also reviewed Scotton's inmate profile, which stated that Health

3

Services had cleared Scotton for regular duty with medical restrictions and that he was cleared for food service work. (Id.)

DHO Perry determined that Scotton committed the act as charged, and he recommended Scotton be sanctioned with, *inter alia*, disallowance of twenty-one days of good conduct time and restricting Scotton to his quarters. (Id. at p. 37.) DHO Perry forwarded his DHO report to the DHO Oversight Specialist with the Bureau of Prisons' ("BOP") Privatization Management Branch in Washington, D.C., who certified that the recommended sanctions were appropriate and that the hearing complied with due process. (Id. at p. 41.) Following this certification, on June 28, 2016, DHO Perry personally delivered a copy of his DHO report to Scotton. (Id. at p. 42.) DHO Perry advised Scotton of his right to appeal the DHO findings and sanctions. (Id.)

## DISCUSSION

In his Petition, Scotton contends that the DHO hearing violated his due process rights. Specifically, Scotton repeatedly contends that DHO Perry was not impartial because Perry had already prepared a typed memorandum notifying Scotton of his quarter-restrictions sanctions at the beginning of the hearing. (See Doc. 1-2, p. 6.) Scotton also contends that the facts did not support DHO Perry's decision.

Respondent counters that Scotton received the appropriate due process protections during the disciplinary proceedings and that the sanctions against him were supported by sufficient evidence. (Doc. 15, pp. 7–10.)

### I. Whether Due Process Requirements Were Met

To determine whether Scotton's right to due process was violated, it must be determined what process was due to Scotton during the disciplinary hearing process. A prisoner has a protected liberty interest in statutory good time credits, and therefore, a prisoner has a

4

constitutional right to procedural due process in the form of a disciplinary hearing before those credits are denied or taken away. O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing Wolff v. McDonnell, 418 U.S. 539, 555–57 (1974)). That due process right is satisfied when the inmate: (1) receives advance written notice of the charges against him; (2) is given the opportunity to call witnesses and present documentary evidence; and (3) receives a written statement setting forth the disciplinary board's findings of fact. Id. (citing Wolff, 418 U.S. at 563–67). Additionally, the Court of Appeals for the Eleventh Circuit has determined that an inmate has the right to attend his disciplinary hearing. Battle v. Barton, 970 F.2d 779, 782–83 (11th Cir. 1992).

As laid out above and in the attachments to Respondent's Response, the record clearly reflects that Scotton received the required due process protections. The investigation into this incident was completed on June 1, 2016, and Scotton received a copy of his incident report on that same date. Scotton does not dispute that he received advance written notice of the charges by virtue of receipt of the incident report on June 1, 2016. Scotton's incident report was investigated, and he received a UDC hearing on June 3, 2016, in accordance with 28 C.F.R. § 541.5. Scotton was offered an opportunity to present documentary evidence and testimony from witnesses at the UDC hearing.

Due to the nature of the charges and Scotton's history of incident reports, the UDC referred the incident report to the DHO. Scotton was provided advance notice of the DHO hearing and notice of his rights regarding the DHO hearing. Scotton was repeatedly advised of the right to "call witnesses" and "present documentary evidence." (Doc. 15-1, pp. 29–37.) Indeed, though Scotton refused the opportunities to identify witnesses before the DHO hearing, once he indicated that he wanted to call witnesses, DHO Perry postponed the hearing so that

5

Scotton would have his witnesses present. Moreover, when the DHO hearing was reconvened, Scotton attended the hearing, and his due process rights were again read and reviewed with him. Scotton was represented at the hearing by a staff representative, and the four witnesses that he requested testified at the hearing. (Id.) The well-documented evidence that Scotton was advised of his rights and that he had an opportunity to present witnesses and documentary evidence far outweighs his conclusory allegations to the contrary.

Scotton's only specific claim supporting his general allegation that his due process rights were violated is his contention that DHO Perry was not impartial at the hearing. Scotton contends "[t]o have a pre-typed memo outlining guilty before hearing, and facts' witnesses testimony and evidence, clearly shows that the DHO was NOT AN IMPARTIAL DECISION MAKER." (Doc. 1-1, p. 3 (emphasis in original).) However, this memorandum appears to largely be a form document that D. Ray James officials use to explain the guidelines of quarters restriction. (Doc. 1-2, p. 6.) The fact that DHO Perry had this memorandum prepared before the hearing does not indicate that he prejudged Scotton's guilt. Rather, it merely indicates that he was prepared to advise Scotton of the nature of these sanctions, in the event he found Scotton committed the charged offense and he agreed with the UDC's recommendation of a quarters restriction sanction. Furthermore, Perry's DHO Report outlines in detail the evidence received at the hearing and makes clear that Perry based his decision on that evidence, not any prehearing bias.

For all of these reasons, Scotton received adequate due process, and the Court should **DENY** this portion of his Petition.

## II.     Whether Sufficient Evidence Supports DHO Perry's Findings

Moreover, the record reveals sufficient evidence to support the sanctions against Scotton. "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). Determining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Smith v. Sec'y, Fla. Dep't of Corr., 432 F. App'x 843, 845 (11th Cir. 2011). "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 456. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Tedesco v. Sec'y for Dep't of Corr., 190 F. App'x 752, 757 (11th Cir. 2006) (internal citation omitted). In addition, an inmate facing disciplinary sanctions is not entitled to the full panoply of rights afforded to criminal defendants. Id.

DHO Perry cited to a number of items of evidence when finding that Scotton committed the offense of refusing to work or accept a program assignment. (Doc. 15-1, pp. 35–37.) The DHO Report outlines that the sanctions against Scotton were based on Scotton's own statements, the written reports of staff, witness testimony, Scotton's inmate profile, and an internal investigation of the allegations against Scotton. Additionally, the DHO assessed Scotton's denials and determined that they lacked credibility and contradicted his own statement. In his Reply, Scotton repeatedly charges that D. Ray James staff provided false testimony and statements to support the sanctions against him. (Doc. 18.) However, it is not the Court's place

7

to reweigh the DHO's credibility decisions or to reexamine all of the evidence against Scotton. Rather, the Court is to merely assess whether some evidence supports the sanctions against him. Here, the record unquestionably satisfies that inquiry.

Scotton contends that DHO Perry failed to consider the fact that he was medically disqualified from working in the kitchen. He maintains that, prior to the incident on June 1, 2016, he "was placed on permanent medical idle, to whereas though, [Scotton] was excluded and prohibit [sic] to work because his continue [sic] medical condition." (Doc. 1-1, p. 4.) However, the records that Scotton provides in support of this argument contradict his claims. It does appear that Dr. Rick Thomas restricted Scotton's medical duty status on May 2, 2016, and included a restriction on food service work. (Doc. 1-2, p. 12.) However, on May 20, 2016, Dr. Thomas updated Scotton's medical duty status and removed the restriction on food service work. (Id. at p. 11.) Additionally, in his DHO Report, Perry states that he consulted Scotton's inmate profile, which indicated that he had been medically cleared for food services work. (Doc. 15-1, p. 36.) In his Reply, Scotton admits that his medical status was changed. (Doc. 18, p. 3.) However, he contends that this change was not done properly. This is of no moment. Rather, the Court's inquiry is whether there was some evidence that Scotton refused to work or report to a program assignment. The record in this case reveals more than ample evidence in that regard. Thus, the Court should **DENY** this portion of Scotton's Petition.

**III. Whether Scotton's Retaliation and Law Library Access Claims are Cognizable**

In his Reply, Scotton claims Dr. Ray James staff have violated his First Amendment rights by retaliating against him, and they have denied his right to use the law library. (Doc. 18, pp. 4–7.) Scotton cannot bring these conditions of confinement claims in this Section 2241 action. His claims would ordinarily be brought pursuant to Bivens v. Six Unknown Named

Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). The distinction between claims which may be brought under Bivens and those which must be brought as habeas petitions is reasonably well-settled. Claims in which prisoners challenge the circumstances of their confinement are Bivens actions, not habeas actions. See, e.g., Hill v. McDonough, 547 U.S. 573, 579 (2006). Habeas actions, in contrast, explicitly or by necessary implication, challenge a prisoner's conviction or the sentence imposed on him by a court (or under the administrative system implementing the judgment). Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Thus, for example, when a prisoner makes a claim that, if successful, could shorten or invalidate his term of imprisonment, the claim must be brought as a habeas petition, not as a Bivens claim. See, e.g., Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477 (1994).

Scotton's retaliation and law library access claims relate to the conditions of his confinement and do not challenge his sentence or conviction or the duration of his confinement. Even if the Court were to find in his favor regarding these claims, the relief would not be to shorten his sentence or order his release. Accordingly, these claims are not cognizable under Section 2241, and the Court should **DISMISS** these portions of Scotton's Petition.

**IV. Motion for Copies**

In his Motion for Copies, Scotton requests copies of his previously submitted exhibits in this case. (Doc. 17.) As Scotton failed to remit any payment for the requested copies, he appears to contend that that Clerk of Court should forward the requested copies before he submits payment for those copies. However, pursuant to 28 U.S.C. § 1914(b) and (c), Scotton is required to prepay any fees prior to receiving copies of any documents. Accordingly, to the extent Scotton requests that the Clerk of Court provide these copies before Scotton remits payment, the Court **DENIES** his Motion.

The Court notes that Scotton was granted leave to proceed in this matter *in forma pauperis*, relieving Scotton from paying the required filing fee associated with his application for writ of habeas corpus, (doc. 5); however, Scotton should be advised that this does not absolve him from any and all additional costs he incurs regarding his habeas petition. Scotton is further advised that he is responsible for maintaining his own records of the case. If Scotton loses papers and needs copies of filings in his case, he may purchase copies of any pleadings directly from the Clerk. Scotton is directed that the fees associated with reproducing any paper record is $0.50 per page, and the Clerk will require the prepayment of fees prior to providing copies of any documents. See 28 §§ 1914(b) & (c). Therefore, the Clerk of Court is **AUTHORIZED** and **DIRECTED** to forward a copy of the docket sheet for this case to Scotton at no charge to him with the understanding that all future requests for copies will require the payment of associated costs.

If Scotton requests copies of documents or the docket sheet in the future, the Court will presume that he is agreeing to pay $0.50 per page for any copies that he is requesting. In other words, if Scotton requests any copies in the future, he is agreeing to pay $0.50 per page for those copies. As to any future requests, the Clerk of Court is hereby **AUTHORIZED** and **DIRECTED** to provide Scotton with any documents he requests in the future at the cost of $0.50 per page and to seek prepayment of those fees from Scotton before providing him with any documents.

## V.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Scotton leave to appeal *in forma pauperis*. Though Scotton has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of

party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Scotton's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

The Court **GRANTS** Scotton's Motion for Extension of Time, (doc. 16), and deems Scotton's June 26, 2017, Reply, (doc. 18), as timely filed. However, the Court **DENIES** Scotton's Motion for Copies, (doc. 17).

Additionally, for all of the above reasons, I **RECOMMEND** that the Court **DENY in part** and **DISMISS in part** Scotton's Petition for Writ of Habeas Corpus, filed pursuant to 28

U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Scotton leave to proceed *in forma pauperis* on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Scotton and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 19th day of September, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA